IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00234-MSK

NORMAN SHAW,

       Petitioner,

v.

WARDEN CHARLES DANIELS,

       Respondent.

_____

## OPINION AND ORDER DENYING PETITION
_____

**THIS MATTER** comes before the Court pursuant to Mr. Shaw's[1] Petition for a Writ of *Habeas Corpus* **(# 3)** pursuant to 28 U.S.C. § 2241, the Respondent's response **(# 15)**, and Mr. Shaw's reply **(# 17)**.[2]

Mr. Shaw is an inmate of the Federal Bureau of Prisons ("BOP"), housed at the United States Penitentiary in Florence, Colorado. Mr. Shaw states that he was sentenced by the United

---

[1] Mr. Shaw pursues this action *pro se*. As a result, the Court construes his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Shaw of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat him according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[2] Also pending is Mr. Shaw's Motion for Default Judgment **(# 16)**. This motion mistakenly asserts that the Respondent failed to file a response to the Petition within the time frame given by the Court. Because the Respondent's response was timely, this motion is denied.

States District Court in Kansas in 2006, and is the subject of restitution orders in two criminal cases in the total amount of approximately $ 3,000.    He states that the BOP is collecting $25 every calendar quarter from his inmate trust account and remitting it to the District of Kansas for payment on his restitution obligations. He contends that this practice – part of the BOP's Inmate Financial Responsibility Program ("IFRP"), 28 C.F.R. § 545.10 – violates the ruling of the 10th Circuit in *U.S. v. Overholt*, 307 F.3d 1231, 1254-55 (10th Cir. 2002), which prohibited sentencing courts from delegating to the BOP the establishment of a restitution schedule under the IFRP. As relief in this action, he requests that the Court direct that the BOP "stop taking 25 dollars every 3 months off of [his] inmate trust fund account."

The IFRP is a BOP program found at 28 C.F.R. §545.10. It "encourages each sentenced inmate to meet his or her legitimate financial obligations." *Id.* An IFRP plan will typically require inmates to meet their financial obligations in the following order: (i) special assessments imposed under 18 U.S.C. §. 3013, (ii) court-ordered restitution, (ii) fines and court costs, etc. 28 C.F.R. § 545.11(a). Payments required under a plan will be a minimum of $ 25 per quarter, with higher amounts payable by inmates classified in higher-earning prison work programs. §545.11(b). Participation in the IFRP is voluntary, but "at subsequent program reviews, staff shall consider the inmate's efforts to fulfill those obligations as indicative of that individual's acceptance and demonstrated level of responsibility." § 545.10. Refusal of an inmate to participate will also result in an inmate losing certain privileges, including furloughs, access to certain work assignments, higher commissary spending limits, etc. § 545.11(d).

In *U.S. v. Overholt*, 307 F.3d 1231, 1254-55 (10th Cir. 2002), the court sentencing the defendant imposed a restitution amount, requiring that "any amount not paid immediately shall

be paid while in custody through the Bureau of Prisons' Inmate Financial Responsibility Program." The defendant appealed, arguing that the court's failure to impose a specific restitution payment schedule violated 18 U.S.C. §3664(f)(2), which states that the "[sentencing] court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." The 10th Circuit viewed the sentencing court's restitution order as "delegating the preparation of a payment schedule to the Bureau of Prisons," and concluded that it was plain error for the sentencing court to do so. 307 F.3d at 1255. After examining the statutory provisions, the court concluded that there is "no room for delegation by the district court with respect to payment schedules for restitution," and remanded the case back to the sentencing court to establish a schedule for payment of restitution. *Id.* Addressing another inmate challenge to application of the IFRP, the 10th Circuit has observed that, in light of *Overholt*, "it seems problematic to conclude that the BOP may assume for itself a responsibility that the district court is not permitted to delegate to it." *Bradshaw v. Lappin*, 320 Fed.Appx. 846, 849 (10th Cir. 2009) (unpublished).

The record in this case indicates that, at least in part, Mr. Shaw's current sentence is entirely consistent with *Overholt*. In July 2006, the U.S. District Court for the District of Kansas sentenced Mr. Shaw for bank robbery. As its restitution order, the court directed that Mr. Shaw make restitution in the amount of $ 700 (plus a $ 200 special assessment), that "payment [is] to begin immediately," and that he make "payment of not less than 10% of the funds deposited each month into [his] inmate trust fund account . . . ." Such a sentence complies with the requirement of *Overholt* that the sentencing court, not the BOP, dictate the schedule for repayment – in this case, the court directed that Mr. Shaw immediately begin making monthly payments of 10% of

3

the balance of his inmate trust account. To the extent the BOP is effectuating that directive and the schedule set by the court (the IFRP merely being the mechanism by which the BOP collects and remits the sums ordered by the court[3]), *Overholt* offers Mr. Shaw no basis for complaint.

However, Mr. Shaw is also subject to an outstanding restitution order from a prior conviction. In 2003, Mr. Shaw was sentenced on a Supervised Release violation and ordered to pay restitution in the amount of $ 2,307. Unlike the 2006 sentence, the court in 2003 did not provide a specific schedule for the repayment of that restitution amount. Under *Overholt*, then, it would appear the BOP cannot take it upon itself to independently require Mr. Shaw to make restitution payments through the IFRP with regard to the 2003 restitution order.

The term "require" in the prior sentence is emphasized for a reason. As noted above, except where participation is mandated by the sentencing court, the IFRP is a voluntary program in which inmates may choose to participate. *U.S. v. Taylor*, 620 F.3d 812, 816 (7th Cir. 2010); *U.S. v. Munoz*, 610 F.3d 989, 997 (10th Cir. 2010). Admittedly, the choice is not a neutral one; an inmate who chooses not to participate in the IFRP loses access to a wide array of privileges and benefits that participating inmates enjoy. But the mere fact that the BOP has sweetened choice (or soured the other) does not alter the fundamental fact that an inmate may choose not to participate in the IFRP with regard to restitution obligations that have not otherwise been specifically scheduled by the sentencing court.

---

[3] It is not clear to this Court whether the quarterly $ 25 payments are higher or lower than strict application of the sentencing court's schedule – 10% of Mr. Shaw's trust account balance, withdrawn monthly – would require. To the extent the $ 25 quarterly sum is lower, Mr. Shaw appears to be enjoying the benefits of the BOP's failure to apply the precise terms of the sentencing court's instructions. To the extent the quarterly sum is higher than what Mr. Shaw would owe according to the strict terms of the sentencing court's restitution schedule, the discussion *infra*. establishes that Mr. Shaw is remitting the excess sums voluntarily.

Here, the record reflects that Mr. Shaw has, perhaps reluctantly, elected to volunteer to participate in the IFRP and receive the concomitant benefits. The Respondent has attached copies of Inmate Financial Plans from March 2010, February 2009, October 2008, etc., and in each case, Mr. Shaw has expressly noted his agreement to participate in the IFRP and signed the document. Under these circumstances, his allegations in the Petition do not warrant relief. The ongoing withdrawals from his inmate trust account are those to which he has expressly consented.

If he is truly aggrieved by the quarterly deductions from his trust account, Mr. Shaw may elect to terminate his participation in the IFRP. Should he do so, he will, of course, lose access to the various privileges and benefits set forth in 28 C.F.R. § 545.11(d). Whether the loss of those privileges and benefits is worth the increased balance in his trust account is Mr. Shaw's decision to make.[4] For purposes of this proceeding, it is sufficient to note that the withdrawals to

---

[4] In his reply brief, Mr. Shaw states that he "voluntarily participated in the IFRP to avoid sanctions," but contends that he "challenges the authority of the BOP to impose . . . sanctions" should he withdraw his consent. To the extent this can be read as an argument that the revocation of privileges and benefits from non-IFRP participants is somehow unlawful, the Court declines to consider the contention. Unless and until Mr. Shaw does indeed withdraw from IFRP participation and suffer the consequences, any challenge to those consequences would effectively request an improper advisory ruling from the Court. Moreover, the Court finds that, even if such a challenge was cognizable under the current facts, Mr. Shaw has failed to offer any meaningful argument as to how the withdrawal of privileges and benefits from non-participants implicates any particular legal principle.

date have been made with Mr. Shaw's express consent.  Accordingly, the Petition **(# 3)** is

**DENIED**.[5]  Mr. Shaw's Motion for Default Judgment **(# 16)** is **DENIED**.  The Clerk of the

Court shall issue a judgment and close this case.

   Dated this 8th day of November, 2010

                                        **BY THE COURT:**

                                        Marcia S. Krieger
                                        United States District Judge

---

[5]It is not clear to the Court whether 28 U.S.C. § 2253 requires the issuance of a Certificate of Appealability before Mr. Shaw may seek review of this ruling.  To the extent such a Certificate is necessary, the Court has considered the standards of *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and finds that Mr. Shaw has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition.  Accordingly, the Court also denies a Certificate of Appealability.